GAUNTLETT et al. v. CAMERON et al.

(Supreme Court, Appellate Division, Third Department. June 30, 1904.)

1. PLEDGES—ENFORCEMENT—PROCEEDS AND SURPLUS.

In a suit by a trustee to foreclose the pledge of certain securities, and to procure a determination of conflicting claims to the surplus, involving the ownership of certain stock, evidence considered, and *held* insufficient to sustain a finding that the certificate was assigned to plaintiff by a claimant as an independent and subsequent collateral as surety for the debtors, and that he was entitled to a superior equity in the distribution of the surplus.

Houghton, J., dissenting.

Appeal from Special Term, Tompkins County.

Action by John C. Gauntlett, as trustee for Mary C. Gauntlett and others, against Frederick W. Cameron, as assignee, and others, to foreclose a pledge of securities, and to procure a determination of conflicting claims to the surplus. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

J. M. Lawson (Judson S. Landon and Robert J. Landon, of counsel), for appellant Cameron.

George A. Strong (S. D. Halliday, of counsel), for appellant Whitehead.

William Nelson Noble, for respondent John C. Gauntlett.

Bissell, Carey & Cooke (Martin Carey and James McC. Mitchell, of counsel), for respondent Frank S. McGraw.

CHASE, J. Defendants Henry Patton and David H. Patton for several years prior to May 8, 1893, were copartners doing business principally as wholesale dealers in lumber. The defendant Thomas H. McGraw had for many years prior to that date been engaged as a manufacturer and wholesale dealer in lumber. Said Henry Patton and Thomas H. McGraw had for many years been personal friends, and each had great confidence in the other. The business dealings of Patton & Co. and of said Thomas H. McGraw resulted in many financial transactions between them, and they also respectively became financially interested in numerous other business enterprises which they promoted and controlled. The partnership and said Thomas H. McGraw each made and indorsed notes for the accommodation of the other. There were a large number of such accommodations, and many renewals thereof. They became equally interested in the stock of the

following corporations, viz.: The Adirondack Timber & Mineral Company, the Trenton Falls Lumber Company, and the Beaver River Lumber Company; and they also became interested in an undivided one-fifth part of township No. 6, called "Sobriety," in John Brown's tract, in the state of New York. On said May 8, 1893, according to the stockbook of said corporations, said Patton & Co., either in their partnership name or in the name of said Henry Patton, and said Thomas H. McGraw each had 1,150 shares of the stock of the Adirondack Timber & Mineral Company, and 562½ shares of the stock of Trenton Falls Lumber Company, and 126 shares of the stock of the Beaver River Lumber Company. The stock of Thomas H. McGraw in the Adirondack Timber & Mineral Company was represented by certificate No. 23, which was issued to him September 13, 1890. Early in May, 1893, among other notes outstanding, were notes aggregating $150,000 made by Patton & Co. to the order of Thomas H. McGraw, and indorsed by him. These notes were soon to become due, and the financial condition of the obligors thereon and the stringency of the money market at that time were such that said notes could not be paid, and said obligors were apprehensive that the notes could not be renewed. It is claimed by the appellant Cameron, as assignee, that Thomas H. McGraw was the principal and primary debtor on all of these notes, and that Patton & Co. were sureties thereon only. They were both liable to the owners of said notes, and both were anxious to obtain a loan for the purpose of paying said notes so outstanding. A few days before May 8, 1893, Thomas H. McGraw and his brother, the defendant Frank S. McGraw, went to the plaintiff, at Ithaca, and plaintiff's testimony as to the interview is as follows:

"Mr. Thomas McGraw and Frank McGraw came here, and Tom said he had a lot of paper out with Patton—mixed with Patton's. I didn't understand, hardly, but it was their paper, and he wanted to borrow money. He wanted ready money. The banks had refused to discount, and he had paper coming due, and he wanted money."

Plaintiff was acting for Joseph W. McGraw and Georgia Curtiss, and for Letty Gauntlett, his wife, a brother and sisters of Thomas H. McGraw and Frank S. McGraw. Said Joseph W. McGraw was at Washington, and he was telegraphed for, and came to Ithaca. The brothers and sisters, with the exception of Mrs. Curtiss, were thus in consultation in the interest of Thomas. Henry Patton was then telegraphed for at Albany to explain in regard to the value of the stock of the three lumber companies. He came in response to the telegram, and stated what he thought would be the future of the properties of said corporations. A letter was then written to Georgia Curtiss, of which the following is a copy:

"Ithaca, May 6th, 1893.

"My dear Sister: Mr. Patton has been on to explain to us the situation relative to Thomas' financial standing. Tom owes one hundred forty-five thousand dollars ($145,000) payable within six months, $60,000 May, $60,000 June, $35,000 in July. He is unable to take care of this paper and in order to keep him from failing we must furnish the above amount or all will be lost. Lettie provides for $70,000 to convert New York Central stock; Will, $25,000; will you furnish $50,000 to make the necessary amount? We have weighed this matter fully and believe this the only course to pursue. Mr. Patton joins

in giving us security amounting upwards of $300,000 consisting of certificates as follows: 2,300 shares at eighty, $184,000; Sobriety, $25,000; Trenton Falls certificate, Henry's 56,250, Tom's 56,250. Beaver River stock actual value 70,-624, total $392,124. This security is good and we all believe this will all come out all right."

This letter was signed by Lettie Gauntlett and Joseph W. McGraw. Thomas H. McGraw and Frank S. McGraw took the letter, and immediately went to Bay City, Mich., where Georgia Curtiss resided, to obtain her consent to the loan. They obtained her consent, and she added her signature to the letter. Thomas H. McGraw and Frank S. McGraw returned to Ithaca May 8th, and an instrument was prepared as follows:

"Whereas, we, Thomas H. McGraw, of Saratoga Springs, and Patton & Co. of Albany, N. Y., are justly indebted to Georgia Curtiss, Lettie Gauntlett, and J. W. McGraw in the sum of one hundred and forty-five thousand dollars, money loaned us this day, and evidenced by fifteen promissory notes dated this day for five thousand dollars each, and seven promissory notes dated this day for ten thousand dollars each, all payable to John C. Gauntlett as trustee for said Curtiss, Gauntlett and McGraw of Ithaca, N. Y.;

"Now as collateral security to said notes, and the better to secure said indebtedness to them, we have deposited with said John C. Gauntlett, as trustee and do assign hereby to him the following property, to wit:

"(1) 2,300 shares of the Adirondack Timber & Mineral Company of the par value of $100 each, as evidenced by stock certificates Nos. 19, 20, 21 and 23.

"(2) 1,125 shares of the Trenton Falls Lumber Company of the par value of $100 each as evidenced by stock certificates Nos. 8 and 9.

"(3) 252 shares of the Beaver River Lumber Company of the par value of $100 each as evidenced by certificates Nos. 7 and 8; also,

"(4) An undivided one-fifth part and interest of, in, and to township No. 6, called Sobriety, in John Brown's tract in the State of New York, for which we have this day given to said John C. Gauntlett as trustee, a deed.

"In case of default in the payment of said notes or any of them, the said John C. Gauntlett as trustee is hereby authorized and empowered to sell of said property, sufficient to realize the full amount of the notes in default, and this he may do at either public or private sale, first deducting from the proceeds of sale, all expenses of collection and sale, and then applying and crediting the remainder to the payment of said notes. Upon payment of all of said notes in full, said property is to be reassigned and delivered to the original owners.

"Dated May 8, 1893."

It was signed by Thomas H. McGraw, and certificate No. 23, for 1,150 shares of the stock of the Adirondack Timber & Mineral Company, was delivered to the plaintiff as trustee. On such certificate was an assignment of the same from Thomas H. McGraw to Frank S. McGraw, dated November 19, 1900, and accompanying said certificate was an instrument, signed by Frank S. McGraw, as follows:

"For value received, I, Frank S. McGraw, of Buffalo, N. Y., hereby assign and transfer to John C. Gauntlett of Ithaca, N. Y. as trustee for Georgia Curtiss and Lettie Gauntlett and J. W. McGraw, the stock named in the annexed certificate, as collateral security for the payment of certain promissory notes of Thomas H. McGraw and Patton & Co., mentioned in a writing dated this day and signed by said Thomas H. McGraw upon the conditions and for the purposes specified in said writing, held by John C. Gauntlett as trustee.

"Dated May 8th, 1893."

Henry Patton was then in Albany, and Thomas H. McGraw took the instrument assigning the collateral, and went to Albany to obtain

the signature of Patton & Co. Henry Patton signed it in the firm name, and joined with Thomas H. McGraw in making 22 joint and several promissory notes, on which and one other similar note, subsequently executed, plaintiff advanced $149,221.46, which was used in paying other notes, as stated. Henry Patton forwarded the collateral owned by Patton & Co. to the plaintiff, and Thomas H. McGraw subsequently sent to the plaintiff the stock of the Trenton Falls Lumber Company and Beaver River Lumber Company standing in his name, and a deed was executed to the plaintiff, as trustee, of the interest in the Sobriety tract. Subsequently the interest in the Sobriety tract of land was sold, and from the proceeds of such sale, and from dividends received on stock of the Adirondack Timber & Mineral Company, the said notes to the plaintiff, with interest thereon, were fully paid, and there remained a surplus in the hands of the plaintiff. This action was brought before said notes were fully paid to foreclose the pledge of securities, and to procure a determination of the conflicting claims of the appellants and the respondent Frank S. McGraw to the surplus.

The decision and judgment of the trial court, so far as material here, awards to said Frank S. McGraw the certificate for 1,150 shares of the stock of the Adirondack Timber & Mineral Company received by the plaintiff in place of said certificate No. 23, and also provides that the remaining collateral in the hands of the plaintiff be sold, and that from the proceeds thereof, added to the cash surplus in the plaintiff's hands, said Frank S. McGraw be paid a sum equivalent to the aggregate of all the dividends declared and paid since May 8, 1893, on the 1,150 shares of Adirondack Timber & Mineral Company stock originally represented by certificate No. 23, with interest on the amount of each separate dividend from the date of declaration and payment of each, and also the sum of $4,878.75, being the proceeds of an interest which the court found that the said Frank S. McGraw had in the lands so deeded to the plaintiff as trustee. It is from that portion of the judgment which finds that the said 1,150 shares of the stock of the Adirondack Timber & Mineral Company were held by the plaintiff as surety for the debt of both Thomas H. McGraw and Patton & Co., and that the said Frank S. McGraw is entitled to a superior equity in the distribution of the surplus by reason thereof, that the appeals are taken.

We do not think that this case presents any intricate questions of either law or fact. There is no material dispute in regard to the principles of equity applicable to any state of facts that can be found from the record. The important question of fact underlying all other questions in this case is whether Frank S. McGraw, as the owner of 1,150 shares of stock of the Adirondack Timber & Mineral Company, assigned the same to the plaintiff as a distinct and independent additional collateral to the loan, and as surety for both Thomas H. McGraw and Patton & Co., or whether he loaned such stock to his brother Thomas H. McGraw, and assented to his using and treating said stock, as between himself and said Patton & Co., as his sole and absolute property. If he did assent to such stock being treated as the sole and absolute property of Thomas H. McGraw, then the court, in distributing the surplus, should, as between Frank S. McGraw and the representative of Patton & Co., continue to so treat the same. Henry Patton was the vice

president of the Adirondack Timber & Mineral Company, and Thomas H. McGraw was a director thereof. Certificate No. 23, for 1,150 shares of said stock, had been issued to Thomas H. McGraw, and remained on the books of the company in his name, and he was the apparent owner thereof. The dividends declared on the stock of this company were not declared from the profits in the conduct of a business in the ordinary way, but from the proceeds of the sale of lands and timber; each dividend taking a portion of the capital of the corporation. Each dividend reduced the capital for which the stock itself was issued. Between the time when said stock was issued and the 8th day of May, 1903, several dividends had been paid to said Thomas H. McGraw on said stock, and no protest seems to have been made by Frank S. McGraw to Thomas' receiving and treating the same as his individual property. The dividends on said stock after the same was transferred to the plaintiff, and until new stock was thereafter issued in the name of the plaintiff as trustee, were paid to Thomas H. McGraw, or upon his order. Thomas H. McGraw paid to the plaintiff, as trustee, the amount actually received by him during such time from said dividends, but the amount paid on the orders of said Thomas H. McGraw, amounting to $6,325, seems never to have been transferred to the plaintiff. It does not appear that said Frank S. McGraw ever made any claim to said dividends, or offered any suggestions in regard to the same. Henry Patton, who was the active participant in these matters for Patton & Co., testified that he knew that said certificate No. 23 stood in the name of Thomas H. McGraw, and that he believed that said Thomas was the owner of the same, and that the said Thomas and the firm of Patton & Co. were equally interested in said corporation; that he knew that Thomas intended to put up the stock so owned, or which he believed was owned, by said Thomas, as collateral to the proposed loan from the plaintiff; that at the time he went to Ithaca to explain in regard to the value of the stock in the lumber companies, or before that time, Thomas had asked him if he would be willing to put up his securities with him (Thomas), and that he had assented thereto; that there never had been the slightest suggestion that Frank S. McGraw owned said stock or had any interest therein; that, in case he had known that Thomas was not the owner of said stock, he would not have assigned his stock as collateral to said notes; that he would, under the circumstances, have preferred them to have failed in business, in preference to putting up as collateral to such loans an amount in excess of the collaterals furnished by Thomas. This evidence of Henry Patton is wholly uncontradicted. Apart from the formal transfer made by Frank S. McGraw to the plaintiff, without, so far as appears, the knowledge of any other person, the record does not disclose a single act or word on the part of Frank S. McGraw indicating that he made any claim to the ownership of said certificate No. 23. When Frank S. McGraw and Thomas went to Bay City, Mich., to get the consent of Mrs. Curtiss to the loan, it was stated in the letter carried by them that "Mr. Patton joins in giving us security," but nothing was said therein or at any time about Frank S. McGraw joining in securing the loan. Said letter mentions as a part of a proposed security the 2,300 shares of Adirondack Timber & Mineral Company stock, without

saying a word about any one other than Thomas and Patton & Co. being interested therein, or in any part thereof.

The assignment of collateral on the part of Thomas H. McGraw and Patton & Co., which is dated May 8, 1893, was prepared in the absence of Patton. Frank S. McGraw was an active participant in arranging for the loan, and familiar with the instrument assigning the collateral. This instrument, although executed by both Thomas H. McGraw and Patton & Co., is, so far as the assigning of the stock is concerned, a several contract of the parties thereto. There is no claim that Thomas H. McGraw had any interest in the stock standing in the name of Henry Patton, or that Henry Patton or Patton & Co. had any interest in the stock standing in the name of Thomas H. McGraw. The instrument was signed by Thomas H. McGraw with the knowledge of Frank S. McGraw, as appears by the assignment of Frank S. McGraw to the plaintiff, in which he refers to it, and says, "A writing dated this day and signed by said Thomas H. McGraw upon the conditions and for the purposes specified in said writing." The instrument so signed by Thomas H. McGraw was taken to Albany for the signature of Patton & Co., and was signed by them. It assumes that Thomas H. McGraw and Patton & Co., or one of them, is the owner of the stock therein described, and thus Frank S. McGraw and Thomas H. McGraw said to Patton & Co. that the stock was being assigned in accordance with Patton & Co.'s understanding of the title thereto. It stands undisputed that, if Frank S. McGraw or any other person had communicated to Patton & Co. that the truth in regard to the ownership of said certificate No. 23 was in exact contradiction of the evidence before Patton & Co. when the contract was consummated by them, it would not have been so consummated. The assignment by Frank S. McGraw to the plaintiff was not an original and primary contract transferring collateral to the plaintiff, but simply a confirmation of what had already been done or was about to be done. All of the letters and documents contained in the record, so far as they affect the question, bear out the claim of the appellant Cameron that the respondent Frank S. McGraw intentionally allowed his brother to treat said stock certificate No. 23 as his own. The findings of the trial court to the effect that said certificate No. 23 was assigned to the plaintiff by Frank S. McGraw as a distinct, independent, and subsequent collateral, as surety for Thomas H. McGraw and Patton & Co., is against the weight of evidence. We think that there should be a new trial of this action.

The judgment, so far as appealed from, should be reversed, and a new trial granted, with costs to each of appellants, payable out of the fund, to abide the event. All concur, except HOUGHTON, J., dissenting.

HOUGHTON, J. (dissenting). I think the judgment should be modified, rather than reversed. There is no evidence to contradict the fact that Frank S. McGraw was the real owner of the 1,150 shares of stock of the Adirondack Timber & Mineral Company, represented by certificate No. 23. By his assignment of this stock to the plaintiff to secure the notes of Thomas H. McGraw and Patton & Co., he submit-

ted it, and the dividends accruing on it, to the payment of those notes. I cannot see that he committed a fraud on Patton & Co. by not informing them that he, instead of Thomas H., was the owner of the stock. Nor do I think that he is now estopped, as against them, from claiming ownership thereof. So far as he was concerned, Thomas H. and Patton & Co. were joint and several debtors, and he pledged his stock upon the condition and for the purposes specified in the security agreement signed by them. When the notes had been paid, Frank S. was entitled to the return of such of his stock as was unnecessary to satisfy the pledge. The most, it seems to me, that can be done, is to modify the judgment by reversing that part of it which directs return to him of the dividends on the stock which have been applied to payment of the notes. I doubt if he is entitled to any superior equities, as against Patton & Co., which justify a return to him of any part of his collateral which has actually been applied in payment of the indebtedness. If Patton & Co. had known all the facts, possibly their unused collateral could be appropriated towards full reimbursement of Frank S.; but, even without knowledge, they are not entitled to an appropriation of his stock to satisfy any equities they may have against Thomas H. The stock was never pledged for any such purpose.

I dissent from a reversal, and vote for the modification indicated.